Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. I'm Miguel Gaviria, appearing for Ms. Regalado. I'd like to reserve two minutes for rebuttal. Okay. For eight years, Ms. Regalado was sexually abused by a Guatemalan soldier turned cop during Guatemala's 36-year-long civil war. Paramsami and his progeny mandate that Ms. Regalado's delay in disclosing her sexual abuse cannot support the adverse credibility determination here. Because the BIA failed to follow this court's precedent and substantial evidence does not support any of the bases that the BIA relied on to sustain the adverse credibility determination. Well, since the adverse credibility is really front and center, let me, do you agree that Ms. Regalado did not mention her abuse by Mr. Ramirez in 1994 and 1995? Yes, we are. That's basically. So, what reason did she offer to the immigration judge for this omission? And was the IJ compelled to believe her? Yes, Your Honor. She, in her, at her hearing, Ms. Regalado testified that she was embarrassed and she was scared. And omissions that this court has held in cases like Buseni and Entrasta, omissions are not as probative of credibility as inconsistencies. So, although the IJ wasn't required necessarily to accept her explanation, Paramsami, Kibete, Musa, the line of cases discussing that the timing, or holding rather, that the timing. She waited 20 years, right? Your Honor, there is a delay, 20 years, a 20 year delay between her initial application when she testified before the IJ. But the procedural history here is important. She applied initially in 1994, was ordered and moved in absentia in 1995, and didn't testify as to any, on any issue, and didn't, her case wasn't adjudicated on the merits until her 2014 application after her case was ordered reopened by the BIA at that point. So, the only time that she discussed the merits of her case was in 2017 during the IJ hearing. Well, okay. So, we have, we, it seems to me some of your difficult rocks to push uphill are the standard of review in each of those, in terms of an adverse credibility and then whether it compels a different result. There's no doubt that someone could have believed her, and if they had believed her and the government appealed, we'd, I'd be pushing them in the same way. And then it looks like they kind of left her alone for a while, but then she got three drunk drivings. Right, that is, that is true. That doesn't really bode well for, you know, and I think it would emphasize that as part of those drunk drivings, that she went to programs that told her how dangerous it was, and she just kept doing it. And that, as a judge, that's a frightening concept, regardless of whether someone's a citizen or not a citizen, you know. Yes, Your Honor, her alcohol use and the DUIs that she, she accrued are, are in the record, and those are troubling, but those don't speak to the main issue here, which is her adverse credibility determination. And the, all the reasons that the BIA are not supported by substantial evidence as to the sexual abuse, BIA also... Counsel, did, did, did your client present the parsimony issue to the BIA or IJ? Your Honor, the counsel for, no, my client did not specifically, but that is legal error, and this court can review de novo errors of law. And as to, as to the assessment issue... There's no waiver issue with that, though? There is not, and the government does not argue that either, Your Honor. As to the assessment issue, the BIA and the IJ relied on an asylum officer's assessment to refer as a point of comparison to find her not credible. This court in Singh versus Gonzalez in 2005 held that such assessments to refer are not reliable points of comparison for credibility determinations, and that was legal error here as well. As in Singh, the assessment to refer in this case does not have indicia of reliability. It, the, the asylum officer who prepared it didn't testify before the IJ. It also is nothing more than a short summary, and there is no contemporaneous notes or transcript of what was asked of her at the asylum interview, so that also can't, can't be a basis for finding her not credible. And, and lastly, as to the, as to the sexual abuse issue, Moussa rejected the, the very reasoning the BIA gave here where, to uphold the adverse credibility determination, where the BIA said that just because she was, Mr. Gallardo was able to discuss her father's abuse, that somehow that made, that meant that she had to be able to discuss her own abuse before the asylum officer, and Moussa squarely rejected that. Counsel, it's, it's not just the one issue that the IJ relied on for the adverse credibility finding, right? When I look at, read the IJ opinion, it's longer than most. It's, it's like almost 20 pages or over 20 pages. But, you know, one of the things the IJ actually went through and said there was inconsistencies and there was implausibilities, and one of the things that I think the IJ said was implausible was this whole thing about her brothers having to leave because they were five and, and 11, and that did seem kind of odd. Why is that not pretty implausible? Yes, your honor. First, I'd like to note that the decision is actually before reviews, the BIA's, and since the BIA's decision also pointed to what your honor just raised as an issue that, that is also before the court. Let me make sure I understand what you mean by, are you saying that like this doesn't matter because the BIA didn't specifically mention it or I don't, I don't know. No, I'm just, just noting that the, the BIA's decision is what's in review and whatever the BIA points to in its decision. Well, the BIA adopted the adverse credibility finding here, right? And so, and so I think if we review the BIA's decisions for substantial evidence, so if the BIA adopts the adverse credibility finding, don't we need to look at the record as a whole and see if that, if that supports it. And that would include even stuff the BIA didn't mention, but if it's evidence in the record, which these things that the IJ pointed to, so I don't, I don't think that's true that you only look at the specific things the BIA mentioned. We only look at the grounds of the BIA's decision, but we actually look at the, the record as a whole. That's what substantial evidence means, right? Well, your honor, in this as to what you just pointed out, the, the gorilla issue or the Ms. Regalado's brother's being accused of being recruited by the gorilla. Yes, the BIA pointed to, to that. And so you can look to the IJ's reasoning or what the IJ said about the gorillas. Yes. And on that point, that was nothing more than speculation, your honor. Ms. Regalado testified at the IJ, at the hearing with the IJ that at that time during the Guatemalan civil war, children were recruited. And nothing in the record contradicts that. If anything, there's evidence of just how violent the nature of the conflict was at that time. At five years old, that seems really young. Your honor. Kids can't even tie their shoes at five years old. That's when they're learning to tie their shoes. You know, a gorilla manifesto seems a little of an overreach. Yes, your honor, that, that, that may be true, but there are documented evidence, there is documentation about children being recruited during times of extreme conflict. I'm going to save the time for rebuttal in a minute and a half. Thanks. All right. Thank you, Ms. Brady. I think you're still muted. You need to unmute yourself. Unmute. You're muted. We still can't hear you. You got to hit your, hit the button. There we go. Okay, now we can hear, we'll hear you now. Go ahead. Thank you so much. I apologize. May it please the court. I'm Sue Rowe Brady for the Attorney General. As the court's questions have clarified, the two issues are the adverse credibility determination, but there's also the issue of the denial of petitioner's motion to remand her proceedings. That's for the PSD, right? Why don't you just summarize your perspective, what is in the record that supports the adverse credibility? The issues were, as the board summarized, the adverse credibility in terms of the omission of the abuse that she claims she had. There is also the implausibility, as your Honor's question, about whether her brothers had to leave the country when they were five and 11 years old. And there is also the inconsistency that she gave about different dates when her family left. And the relevance of that is she claimed that when she was kidnapped and abused in 1986, that she didn't have family around. But the different dates she gave for her father and brother's departure, we contend, are inconsistent with that. Also, the Real ID Act allows common sense consideration of implausibilities. And one of the implausibilities was that she claimed that was suddenly kidnapped in 1986 because the military could not find her father. However, she also testified that the military had visited her home for years looking for her father. So there was no explanation of why they would have suddenly kidnapped her in 1986. The other issue on which the agency relied was the lack of corroboration. And the petitioner did not corroborate her claim of eight years of being kidnapped and being held for sexual abuse. Contrary to the brief, she was given notice that she needed to corroborate her claim. At the hearing in September 2017, the judge told her he expected her to corroborate her claim and continue the hearing for a month so that she could do so. When the hearing continued, she presented her father's death certificate and the birth certificates of her two sons, who were born in 1989 and 2001. And while it showed that her father had likely been murdered, it did not in any way show that he had been murdered by her abuser, as she claimed. And while the birth certificate showed that the man she claimed was her abuser was likely the father of her two boys, it did not in any way explain what her relationship had been with him or that she'd been held against her will for a year. Counsel, can you address, I think Judge Bumate had asked the opposing counsel about the waiver issue on the Karamasini, however you say that name, claim. Is your position that the petitioner here waived that or it didn't seem like you raised that, so you didn't challenge it as waived? No, we didn't challenge it as waived, we distinguished the cases. But the other thing about those cases is that each of those cases is a pre-Real ID Act case. And so in 2005, the Real ID Act, we submit, gave the immigration judges broader discretion in terms of finding adverse credibility. And so those cases we submit don't stand for the proposition that they couldn't consider the totality of circumstances in her case. Has any court opined that the Real ID Act did change the parsimony line of the case? No, I shepherdized them, if that's the term, and I didn't see a later case. And how did you distinguish, if we were to hold that it is still good law, how do you distinguish parsimony from the current case? We contend that in the three cases that she mentioned, the Karamasini case, the Musa case, and the Kibede case, and none of those was an issue of a petitioner waiting years to reveal what had happened to her. And they each gave plausible explanations as soon as they had the omission of why they didn't give it. For example, in the Musa case, her mother corroborated that she was afraid to talk about what happened to her sexually because of the standing in the Chaldean community. But why was that enough? She claimed she was embarrassed and scared, and I think she also said that the immigration officers looked like the police, which were the ones that abused her back in Guatemala. Why is that not sufficient? If you examine the record, however, she did not first give the explanation that she was ashamed. She first said that she didn't remember. She said several times she didn't remember what she told the asylum officer. And then she claimed that, yes, there was the issue that he was wearing a uniform. But it was only after a leading question from her counsel, to which both government counsel and the judge objected, that she claimed that she'd also felt some shame. So we submit that on that basis, it's distinguishable from the three cases mentioned in the brief. So to be clear, it doesn't sound like your argument is necessarily, or you at least don't need it to be true, that those line of cases are no longer good law after the Real ID Act, but it seems like more of your argument is that the way things went down at the hearing would support the idea that the judge is looking at the totality of circumstances. This would be a factor to support the credibility finding, the adverse credibility finding? That's correct, Your Honor. That's correct. Finally, in addition to remand, she claimed that she has PTSD. And so I guess my question would be, why shouldn't we remand the case to the agency to consider if Ms. Zilligato's assertion that her family mentioned Mr. Ramirez in 1994 and 1995 was due to the fact that she was suffering from PTSD? For a motion to remand, it's like a motion to reopen, so that petitioner has the burden of showing that the information is new and could not have been discovered sooner. And the immigration judge and the board determined that it wasn't plausible that if she'd had PTSD since 1994, that she would not have mentioned at some point along the way that a condition was preventing her from remembering or from giving a full account, and she did not do so. So we submit on that basis, she didn't sustain her burden for a motion to remand or a motion to reopen. She had counsel from 2014 on, and her proceedings lasted three years. And so at no point during that time did she claim that she had a mental defect. Petitioners counsel are... Let me ask you this. If we were to, hypothetically, if we were to agree with you that and uphold the adverse credibility finding, is Ms. Zilligato eligible for any other relief? No, she's not. No, the immigration judge determined that she wasn't eligible for cancellation of removal, and she did not submit that to the board, so that issue was waived. And that was the only other relief that was mentioned. The asylum withholding of removal and cap protection, which go with the adverse credibility determination, but then cancellation of removal, which she waived before the board. Okay, thank you. Counsel, it seems that the BIA and the IJ made an adverse credibility finding based off of multiple findings. So do we even have to reach the sexual abuse issue to uphold that adverse credibility finding? You mean the failure to mention it? Yes, the parsimony question. Do we even have to reach that line of law in order to uphold the adverse credibility finding? Respondent would submit that the inconsistencies and the plausibilities also go to her credibility. And they're specifically mentioned in the asylum statute as factors the immigration judge can take into account. So we would submit that they would be sufficient in and of themselves for an adverse credibility determination. I don't think that was quite your question, was it, Judge Bumate? No, it did answer. I mean, basically, there were multiple grounds to give the adverse credibility finding, and so only one of them dealt with the So I don't think we don't necessarily have to address the sexual abuse finding. I think that's what you were saying. Is that correct? That is correct. Thank you. So on this basis, we request that the court deny the petition for review. Okay, thank you. Thank you. Uh, Mr. Cordea, you have a minute and a half, basically 127. Could you address the question I just asked? Do you agree that if we we could affirm the BIA without even reaching the sexual abuse question? Or do we have to reach that question? Your Honor, the standards is so long as one reason. If it was substantiates, then then you affirm it. However, none of the reasons support. The other reasons, as Judge Van Dyke pointed out, was the Greer issue, or the her brothers being recruited. Another one, her kidnapping. Neither one of those are supported under Jabril, which this court held that where, where an IJ speculation on an issue that's unsupported by anything record, that can support substantial evidence. In that case, in Jabril, the IJ found it implausible that a person would be beat in the head, shot in the stomach, and go to the hospital to receive treatment. And this court held that that was only could only be speculation. Here, where events happened during the Civil War, and the IJ pointed to nothing else to support his squarely similar as as the holding in Jabril. And as to the date inconsistency, this court in G, G versus Holder, held that date inconsistency that an IJ characterized as central, could not substantiate or was not substantial evidence because the record blighted. Here at AR 676, the record itself clarifies any inconsistency and the assessment is unreliable. So that also doesn't support it. And I see I'm on my time is done. Yes. Does the panel have any additional questions? All right. Thank you. Having no additional questions, this matter will now stand submitted. Thank you both for your argument. And once again, thank you for the court for handling this case pro bono. And we appreciate everyone appearing by video during these challenging times. Thank you.
judges: Callahan, Bumatay, Vandyke